WARNER, Judge.
This is an appeal of a summary judgment in favor of appellee, John Callahan, on the complaint of appellant, Francis Green, alleging breach of an oral contract. The appellee moved for summary judgment on the basis of a release, which he claimed precluded this suit. Because we find material issues of fact still exist, we reverse.
Green was employed as chief financial officer of a corporation of which Callahan was both a major stockholder and chairman of the board of directors. Because the stockholders and directors were unhappy with the president, who was also a stockholder, Callahan asked Green to provide information which would assist the stockholders and directors in removing the president. The president was trying to raise money to buy out Callahan and the other stockholders. Believing that the president could not raise the money and still wanting to remove him, Callahan wanted to circulate the information Green had prepared to all of the directors. Green, however, was concerned that if the president succeeded in buying out Callahan and the other shareholders and also found out what Green had done, he would be fired. Callahan promised Green that the stockholders would pay him $100,000 and help him find a new job if this happened. With that assurance, Green permitted Callahan to circulate the information.
As it turned out, the president raised the money, bought out Callahan and the remaining shareholders, and then fired Green. Green learned of this from Callahan five days before his termination. Callahan reiterated his promise at that time that the stockholders would pay Green the $100,000 as soon as they received their money from the sale of their stock. A termination agreement was entered into between the company and Green. In consideration of salary payments, a car and continuation of medical insurance, Green released the company, its affiliates, “and their respective officers, directors, agents, employees, successors and assigns ... from any and all claims and actions whatsoever arising out of Green’s employment by the Company and the termination of said employment.” The agreement also stated that Green had agreed no other promises or inducements were made to him to execute the agreement.
Three months later, Green confronted Callahan and demanded payment. Callahan said that he would meet with the other shareholders and determine how payment would be made. Callahan then gave Green a $5,000 cheek as a down payment. Six weeks later, as per Callahan’s request, Green submitted an invoice for the $100,000, giving credit for the $5,000. The next day, Green received back a revised invoice showing a total bill of $20,000 instead of $100,000. When confronted by Green, Callahan advised him that he had no legal obligation to pay $100,000 and would only pay his share or $20,000. Green then asked for the addresses of the other shareholders so he could send them a bill for the balance. Callahan refused, insisting that if Green attempted to bill the other defendants for the balance, he would not send Green the $15,000. Three days later Green received a check for $15,000. Green made a qualified endorsement on the check and instituted suit for the balance.
In his answer, affidavit, and deposition, Callahan denies all of this. He denies that he ever was dissatisfied with the president of the company, that he ever asked Green for information, that he wanted to circulate the information, or that there was any agreement whatsoever between Green and himself. In his deposition, he could not recall much if anything about any question asked. Thus, there are many disputed issues of fact.
Callahan relies instead on the release as requiring the entry of summary judgment. He argues that a claim cannot be made against him because as a director, he was specifically included in the release, and the gathering of the information regarding the president was a matter within the employment of the Green.
*23 While the release includes within its terms the officers, directors, employees and agents of the company, it does not include its stockholders, and Green sued Callahan as a stockholder in his individual capacity and not as a director. As in Sheen v. Lyon, 485 So.2d 422 (Fla.1986), the language of this release only purports to discharge those for whom the company may be liable. The company would not have liability for the acts of its shareholders individually, as stockholders are without power to act for a corporation unless that power is specifically delegated to them. “Although the ultimate control of a corporation resides in its stockholders, generally speaking, in the absence of statutory authority, the stockholders as such cannot act for the corporation either individually or collectively.” Mease v. Warm Mineral Springs, Inc., 128 So.2d 174-179 (Fla. 2d DCA 1961). Thus, since the agreement does not expressly include the stockholders of the corporation, it does not clearly and unambiguously release Callahan from the agreement he made with Green, if that agreement was made by Callahan as a stockholder of the company. This is a question of fact to be determined by the trier of fact.
Having determined that Callahan was not entitled to summary judgment based on the release, as can be seen from the recitation of facts, there are clearly disputed issues of material fact as to whether this agreement alleged in the complaint existed at all, which must be resolved by the trier of fact.
We also reverse the accompanying attorney’s fees and costs award pursuant to section 57.105, Florida Statutes (1993). First, Green did not waive his right to contest the issue of entitlement on appeal by failing to appeal the order granting entitlement to attorney’s fees, because the post-judgment order awarding fees was not appealable until the amount of fees was determined. See Winkelman v. Toll, 632 So.2d 130 (Fla. 4th DCA 1994). Second, the trial court’s finding appears to be based on the existence of the release, which we have found did not clearly and unambiguously release the stockholders of the company from liability. Thus, the lower court’s reliance on Ensign Bank, F.S.B. v. South Florida Warehousing II, 582 So.2d 165 (Fla. 4th DCA 1991), is misplaced.
Reversed and remanded for further proceedings consistent with this opinion.
KLEIN and STEVENSON, JJ„ concur.